JASPER E. JONES, Judge.
The defendant, Kevin Shows, was indicted for the second degree murder of his stepfather, Johnny Taylor, in violation of LSA-R.S. 14:30.1. The case was tried before a jury. After the case was submitted to the jury, the defendant, with the state’s acquiescence, tendered a guilty plea to manslaughter in violation of LSA-R.S. 14:31. The guilty plea was accepted by the trial judge. The judge subsequently sentenced defendant to eleven years at hard labor and ordered the sentence to be without benefit of parole, probation or suspension of sentence under the provisions of LSA-C.Cr.P. art. 893.1.[1] Defendant appeals his sentence complaining that the trial judge failed to state the factual basis for the sentence as required by LSA-C.Cr.P. art. 894.1 and that the sentence imposed is excessive. We affirm.
Defendant shot and killed Taylor on June 30, 1982 following an altercation at the family home located near Logansport. The defendant was 17-years-old and was living in the home with his mother, Taylor and two brothers and a sister. None of the other family members were present during the altercation and shooting. The evidence established the altercation was precipitated by the defendant using Taylor’s video game and by Taylor accusing the defendant of stealing a rifle. Taylor allegedly struck and pushed defendant to the floor and threatened to kill him and the rest of the family when they returned home. Following these events the defendant ran into a bedroom and secured a loaded 12-gauge shotgun. When Taylor saw the gun he attempted to flee. Defendant chased Taylor out of the house and shot him three times from a close distance while Taylor was running away from him. After the shooting defendant returned into the house. Several minutes later he returned to the yard and found Taylor still alive and asking for help. The defendant then had a neighbor call an ambulance. Taylor died shortly thereafter from the gunshot wounds.
Although he denied any involvement in the shooting defendant was arrested the next day. After he was in jail 2V2 months he wrote his mother a letter confessing to the shooting. The mother took the letter to the police and defendant gave a recorded confession.
A presentence investigation report compiled at the direction of the trial judge indicates that defendant had an unstable home life. He was expelled from school in the eighth grade and has not returned to school. At the time of his arrest he was too young to have developed much of a work record but a former employer spoke highly of him. The presentence report shows the defendant has no juvenile record and is considered to be a first felony offender. However, in May of 1982 he was charged with felony theft and committed the instant offense on June 30, 1982. While in jail'on the murder charge he escaped and was charged with simple escape.
The sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir. 1983); State v. Square, 433 So.2d 104 (La. 1983).
A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. 1, § 20 if it is grossly out of *1150 proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La. App. 2d Cir.1983).
The sentencing guidelines of LSA-C. Cr.P. art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983); State v. Sepulvado, 367 So.2d 762 (La.1979). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Hammonds, supra; State v. Cunningham, supra; State v. Smith, 433 So.2d 688 (La.1983).
Defendant’s contention that the trial judge failed to state the factual basis for the sentence is totally without merit. The judge went to great lengths to explain his sentencing choice and he thoroughly complied with the 894.1 guidelines. The judge noted for the record defendant’s family history, work and criminal records and stated defendant was entitled to some mitigation of sentence arising from the circumstances of the offense. However, based primarily on the seriousness of the offense, the judge concluded defendant should receive a sentence in the statutory midrange. (The maximum sentence for manslaughter is 21 years.)
In brief defendant argues the circumstances of the offense should have been given greater weight in mitigation of the sentence. He contends it was shown at trial that Taylor made life unbearable for the family with constant threats, verbal and physical abuse. He also argues that Taylor scared the defendant so badly prior to the shooting that he had no other choice but to kill him. Defendant contends it was either him or Taylor.
We have reviewed the entire record and find nothing to justify defendant’s killing Taylor. At the most the record reveals Taylor was ill-tempered and when he lost his temper he verbally abused and occasionally threatened members of the family. He may have occasionally used some physical force against members of the family but there is no support for defendant’s claim of constant physical abuse and there is nothing to show that Taylor ever carried out any of his threats.
Defendant also argues the trial judge erroneously interpreted his failure to confess for 2½ months as an indication that he is likely to commit other crimes if given probation. The judge reached this conclusion because he believed the coming to grips with one’s guilt is an important step in rehabilitation. Although defendant was under no obligation to confess and had been advised against doing so by his attorney we are unable to say the trial judge’s conclusion that defendant is likely to commit other crimes is incorrect. That conclusion is supported by defendant’s arrest record and by the fact that he showed little remorse for his actions at trial.[2]
*1151 We agree with the trial judge’s determination that defendant is in need of a period of incarceration and we find no manifest abuse of discretion in the sentence imposed. The killing of another is an extremely serious offense and should not be dealt with lightly unless there was some justification for the killing. The evidence does not support defendant’s claim the shooting was justified. We further note that defendant received considerable benefit from his guilty plea. A conviction for second degree murder carries a mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. Although we will not speculate as to the verdict the jury would have returned, we note that there was sufficient evidence to support a conviction for second degree murder. Defendant intended to kill Taylor. His act of shooting an unarmed man who was running away from him precludes a finding of self-defense and the fact that no one else was home and in immediate danger from Taylor’s threats precludes a finding of defense of others. Furthermore, a reasonable juror could have concluded that there was a sufficient interval between the time Taylor allegedly attacked defendant and the shooting for defendant’s blood to have cooled.[3]
Defendant also questions the trial court’s use of C.Cr.P. art. 893.1 to enhance the sentence imposed. When defendant’s guilty plea was accepted, the trial judge failed to inform him his sentence could be without benefit of parole, probation or suspension of sentence under 893.1. The failure to advise defendant that he could be sentenced under the provisions of 893.1 does not effect the validity of either the guilty plea or the sentence imposed. If a defendant is otherwise properly “Boykin-ized” the trial judge is not required to inform him that he can be sentenced under an enhanced penalty statute. State v. Nuccio, 454 So.2d 93 (La.1984). A review of the record reveals that defendant was properly informed of the effect of his guilty plea in accordance with Boykin and its progeny.[4] See also State v. Kennedy, 463 So.2d 808 (La.App.2d 1985). We find no error in the trial court’s determination that the sentence be without benefit of parole, probation or suspension of sentence under 893.1.
For the foregoing reasons defendant’s sentence is AFFIRMED.

. Art. 893.1. Use of firearm in commission of a felony; sentencing
When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
(1) The maximum sentence provided by law, in the same manner as provided in the offense, if the maximum sentence is less than five years or more.
(2) Five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
Imposition or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole, (emphasis supplied)

. At trial defendant gave the following responses to the prosecutor's questions:
Q. Tell me this. Why did you deny to the officers when they got there that evening that you were the one who shot him?
A. Because I did not want to go to jail.
Q. You don’t want to go to jail now, do you?
A. No, sir.
Q. Ain’t nobody in his right mind that wants to go to jail, is it?
A. No, sir.
Q. Isn’t it a fact that you might alter some of these facts to your advantage to try to keep from going to jail, Mr. Shows?
A. No, sir. I have not got nothing to be ashamed of.
Q. You are not ashamed of what you did in this case?
A. I did it. I was mad.
Q. You are not ashamed of it, either, are you? You are not really sorry that this man is dead, are you? Look at me and answer that question.
A. Yes, I am sorry that he is dead.
Q. But you are not sorry you shot him?
A. No, sir.
Q. You are not sorry you shot him at all, are you?
A. No, sir.
Q. You believe he needed it, don’t you?
A. Yes, sir.
Q. And that is what you were intending to do, wasn't it? Is that the truth?
*1151 A. When he made me mad, yes, sir.
Q. So you are going to take the law in your own hands and settle that problem, and that’s the way to do it, isn't it?
A. It was either him or me.

. The manslaughter statute, R.S. 14:31, provides in part:
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).