496 So.2d 554 (1986)
STATE of Louisiana
v.
Shelby ARABIE (Two Cases).
Nos. Ka 86 0087, Ka 86 0088.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
*555 Bryan Bush, Dist. Atty., Baton Rouge, by Jesse Bankston, Asst. Dist. Atty., for plaintiff-appellant.
David Price, Appellate Counsel, Asst. Public Defender, Office of the Public Defender, Baton Rouge, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
LANIER, Judge.
Shelby Arabie (defendant herein) and Wade East were charged by a single grand jury indictment with the second degree murder of Benny Posey, a violation of La.R.S. 14:30.1. Pursuant to a plea bargain, the indictment was amended with respect to East, who pled guilty to accessory after the fact to second degree murder. State v. East, 486 So.2d 902 (La.App. 1st Cir.1986). Following defendant's not guilty plea to the instant charge, he was tried by jury and convicted as charged. Thereafter, defendant filed a motion for post verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. The trial court denied the motion for acquittal, but modified the verdict by rendering a judgment of conviction for the lesser responsive offense of manslaughter. La.R.S. 14:31. Defendant was subsequently charged and adjudicated as a second felony habitual offender. La.R.S. 15:529.1. The trial court sentenced defendant to a sixteen year term of imprisonment at hard labor and, pursuant to La.R.S. 14:95.2, to a consecutive five year term at hard labor to be served without benefit of probation, parole, suspension of sentence or credit for good time. The State and the defendant have appealed.

FACTS
Sometime before September 20, 1984, Wade East, a friend of the defendant, made arrangements to sell ten pounds of marijuana to Benny Posey and Thomas Boswell of Mississippi for a price of nine thousand *556 dollars. The marijuana for the sale was to be supplied by defendant. According to the plan, East and defendant were to meet the buyers and consummate the deal between 8:00 and 8:30 p.m., September 20, at the rest area near the Butte Larose exit off the Atchafalaya Freeway (Interstate 10) between Baton Rouge and Lafayette.
Benny Posey devised a scheme whereby the sellers would be deprived of the marijuana and the buyers would retain the nine thousand dollars. Posey planned an elaborate "sting" operation. His younger brother, Bruce, and a friend, Betty Campbell, were to interrupt the drug sale and stage an armed robbery of both the sellers and the buyers. The plan required the robbery to be conducted in such a way that the buyers, as well as the sellers, appeared to be victims.
On the evening of September 20, defendant and East met with Benny Posey and Boswell at the Butte Larose rest area at the scheduled time. Defendant and East arrived in a Camaro automobile, and Benny Posey and Boswell arrived in a van. After socializing for a few minutes, the four men climbed into Posey's van in order to consummate the sale. A few minutes later, Campbell and Bruce Posey opened the front doors of the van and climbed into the front seats. Bruce held a snub-nosed revolver on the four "victims" and announced that he was going to rob them. After ordering them to hold their hands up, he threatened to shoot anyone who resisted. At Bruce Posey's direction, Campbell, who was seated in the driver's seat, drove the van about a mile down the levee road. After bringing the van to a stop, Campbell demanded valuables and money, including the nine thousand dollars, from the "victims". She then stuffed the fruits of the robbery into the suitcase which contained the marijuana. Bruce ordered the four "victims" out of the van and directed them to lie face down on the road. After threatening again to shoot them, Bruce returned to the van. He and Campbell drove away in the direction of the rest area.
By chance, an unidentified man, driving a truck, happened by and offered the "victims" a ride back to defendant's Camaro. As they neared the rest area, they spotted Benny Posey's van parked behind a Lincoln Continental automobile on the on-ramp to Interstate 10 East. After proceeding to defendant's Camaro, East removed a revolver from the glove compartment, and defendant retrieved an automatic pistol from under the front seat. Benny Posey then requested that he and Boswell be driven to the location where they had observed his van. Defendant, who was driving the Camaro, complied. When Benny Posey stated that he could not find the keys to his van, defendant replied that he could wait no longer. He and East then drove away in pursuit of the robbers.
Defendant and East soon located the Lincoln. Defendant then directed East to shoot out the tires of the Lincoln. East succeeded in hitting one of the rear tires. Bruce Posey, who was seated in the back seat of the Lincoln, returned fire, and a sporadic exchange of gunfire ensued. Meanwhile, Benny Posey, traveling along with Boswell in the van, approached the Lincoln and the Camaro and began following behind the two vehicles. At no point did Benny Posey or Boswell join in the gun battle between the occupants of the two other vehicles.
As the three vehicles neared the Mississippi River Bridge, Benny Posey managed to pass the Camaro and pull his van in behind the Lincoln. The Lincoln, followed by the other two vehicles, proceeded northbound on Interstate 110 in Baton Rouge and exited on North Street. As the Lincoln reached the bottom of the off-ramp, it sped through the intersection. Benny Posey, following close behind, slipped the transmission of the van into neutral and coasted to a halt at the bottom of the off-ramp. Opening the van door and leaning out, Posey yelled to defendant and East, then immediately behind him in the Camaro, that his van was out of gas and that he needed assistance. Defendant then fired his pistol, striking Posey in the mouth. As Posey fell, the van's transmission slipped into reverse *557 and the van backed onto the curb of the ramp. With the van no longer obstructing the roadway, defendant proceeded down the ramp. At that point, defendant and East returned home to Lafayette.
While en route, defendant and East threw their guns over the side of the Atchafalaya Freeway into Henderson Swamp. The robbers remained in Baton Rouge for a few hours until they had the Lincoln's rear tire repaired. They returned to Mississippi early the next morning.
Meanwhile, Benny Posey was transported to a Baton Rouge hospital where he later died of massive hemorrhaging. An autopsy revealed that a single bullet entered Posey's face from the left side of his mouth and exited on the right side of his head. The massive bleeding, which caused his death, resulted from severance of the right internal carotid artery.

SUFFICIENCY OF EVIDENCE TO CONVICT OF SECOND DEGREE MURDER

(State's Assignment of Error No. 1; Defendant's Assignments of Error Nos. 2 and 3)
The State contends that the trial court erred by modifying the jury verdict and returning a judgment of conviction on the lesser responsive offense of manslaughter. The defendant contends the jury verdict is not supported by the evidence and the trial court erred by not granting a post-verdict judgment of acquittal.
Manslaughter is a responsive offense to second degree murder. La.C.Cr.P. art. 814(A)(3). However, a trial court may modify the verdict and render a judgment of conviction on a lesser included responsive offense only if it finds that the evidence, viewed in a light most favorable to the State, supports only a conviction of that responsive offense. La.C.Cr.P. art. 821(C).
Manslaughter is a homicide which would be either first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. La.R.S. 14:31(1). Nevertheless, "[p]rovocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled ... at the time the offense was committed." La.R.S. 14:31(1). State v. Tompkins, 403 So.2d 644 (La.1981).
The legislature has defined the offense of manslaughter without a detailed enumeration of what shall or shall not be considered adequate provocation. Thus, the adequacy of provocation and time for cooling of blood are primarily jury questions. See Reporter's Comments to La.R.S. 14:31; State v. Rayford, 476 So.2d 961 (La.App. 1st Cir.1985).
Louisiana courts have stated on several occasions that "sudden passion" and "heat of blood" are not elements of the offense of manslaughter. Rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. The jury is free to infer the mitigatory factors from the evidence. State v. Lombard, 486 So.2d 106 (La.1986). In reviewing the trial court's modification of the instant jury verdict, this court must determine whether or not a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. Lombard, 486 So.2d at 111.
In modifying the jury verdict, the trial court opined that adequate provocation, justifying reduction of the homicide to manslaughter, existed from the moment of the armed robbery to the moment that the homicide was committed in Baton Rouge. In so doing, the trial court independently redetermined the probative value of the evidence presented at trial and, thus, committed error.
The facts surrounding the instant offense are relatively undisputed. The only significant divergence concerns whether or not Benny Posey aggressively operated his *558 van during the highway chase between the Butte Larose exit and Baton Rouge. Defendant and Wade East testified that the operator of the van tried to "run them off the road." Boswell, the other occupant of the van, testified that the van was not maneuvered in an aggressive manner toward defendant's vehicle. The trier of fact remained free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984).
Defendant admitted that he pursued the robbers with the express goal of regaining possession of the marijuana and the stolen money. At the moment defendant fired the fatal shot, Benny Posey was positioned in a manner which obstructed defendant's efforts to regain his property. There exists little doubt that defendant was frustrated by his apparent failure to avenge the wrong done to him. Defendant resorted to self-help in an illegal enterprise dependent upon self-help for enforcement of property rights.
Considering all surrounding circumstances and conditions, a rational trier of fact could have concluded that, despite some evidence of provocation, defendant acted with deliberation and reflection and not from heat of passion at the time of the actual homicide. Our law may extend some limited indulgence to passion justly excited, but it does not indulge revenge.
A rational trier of fact, viewing the evidence in the light most favorable to the State, could have found that the mitigatory factors, which reduce a homicide from second degree murder to manslaughter, were not established by a preponderance of the evidence. Accordingly, the trial court erred in modifying the verdict and rendering a judgment of the lesser offense of manslaughter.
In brief, defendant argues that the State's evidence was insufficient to establish that the instant killing was not committed in self-defense.
When a defendant claims self-defense, the State has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. State v. Rosiere, 488 So.2d 965 (La.1986). La.R.S. 14:20 reads, in pertinent part, as follows:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger....
There is no issue as to whether defendant killed Benny Posey. The only question is whether defendant acted without justification. Thus, the relevant inquiry in the instant case is whether or not a rational fact finder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that defendant did not act in self-defense.
The evidence establishes that the initial aggression directed toward defendant by Benny Posey's co-conspirators had terminated when defendant began his pursuit. Having successfully completed the robbery, the robbers and their accomplices retreated, wishing to avoid further conflict. Defendant acknowledged that he had numerous opportunities to discontinue the chase. Clearly, defendant's main concern was not for his physical safety. Rather, he fired at the victim to eliminate an obstacle which interfered with his efforts to recover the stolen property.
The record before us contains no evidence tending to show that at the time in question defendant would have been in any danger had he not pointed a loaded gun at Benny Posey. The law does not permit an individual to track down his enemy, shoot him with a pistol, and then claim justification for the homicide because of prior threats.
Under these circumstances, we find that the State met its burden of proof, that is, viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found beyond a reasonable doubt that defendant did not act in self-defense.
*559 The State's assignment of error has merit; the defendant's assignments of error do not.

ILLEGAL SENTENCE

(Defendant's Assignment of Error No. 4)[1]
Defendant contends the trial court erred by sentencing him pursuant to La.R.S. 14:95.2 because the State failed to charge him with violation of that statutory provision.
In the instant case, it was not until after defendant's conviction of second degree murder that the State moved the trial court to enhance defendant's sentence by application of La.R.S. 14:95.2. Defendant was not charged by indictment or bill of information with violation of La.R.S. 14:95.2 or with firearm use in commission of the crime. Accordingly, the statute may not be applied in sentencing defendant. See State v. Jackson, 480 So.2d 263 (La.1985); State v. Frazier, 492 So.2d 156 (La.App. 1st Cir.1986).

DECREE
For the foregoing reasons, the post-verdict relief granted by the trial court is reversed and the sentence is vacated. This matter is remanded to the trial court for reinstatement of the jury's verdict of guilty of second degree murder and for resentencing in accordance with law.
REVERSED AND REMANDED.
NOTES
[1] Defendant's assignment of error number one is not briefed and is considered abandoned. Rule 2-12.4, Uniform RulesCourts of Appeal.